PERFECTION TIRE & RUBBER COMPANY, Appellee, v. KELLOGG-
MACKAY EQUIPMENT COMPANY, Appellant.

**MECHANICS' LIENS:** Collateral Security—Retention of Title to Improvement. A contractor who, at the time of contracting to furnish and erect an improvement on land, retains title in himself to the improvement until full cash payment is made, with right to go upon the land in case of any default, and remove said improvement, thereby effects collateral security, and deprives himself of the right to a mechanics' lien.

**WORDS AND PHRASES:** ''Collateral Security.'' ''Collateral security'' is something that stands by the side of the principal promise, as an additional or cumulative means for securing the payment of the debt.

**COURTS:** Rule of Decision—''Dictum'' Defined. The binding force of a decision is coextensive with the facts upon which it is founded; and if correlated subject-matter is under discussion and decided, such decision is not mere *obiter dictum*.

**EQUITY:** Jurisdiction—Retention of Jurisdiction. Equity, after granting a prayer for the cancellation of a claim for a mechanics' lien, on the ground that claimant had waived the same by taking collateral security, may, in the absence of a motion to transfer to the law calendar, retain jurisdiction of claimant's purely legal counterclaim for the value of the improvement, and enter judgment accordingly.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

MARCH 7, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

ACTION in equity to cancel and set aside a mechanics' lien. Defendant filed cross-petition against plaintiff to recover for material furnished and labor performed under a written contract and to foreclose the mechanics' lien, which plaintiff seeks to cancel. Demurrer of plaintiff to the cross-petition was sustained, whereupon the defendant filed a counterclaim praying

for the same relief as in the cross-petition. Plaintiff filed a motion to strike the counterclaim which was sustained. Defendant elected to stand on its pleadings and the court entered judgment dismissing defendant's counterclaim and for costs.—*Affirmed in part and reversed in part.*

*Herminghausen & Herminghausen,* for appellant.

*J. M. C. Hamilton,* for appellee.

DE GRAFF, J.—On October 7, 1919 the defendant filed statement for a mechanics' lien in the office of the clerk of the district court of Lee County, Iowa and it is to this lien that plaintiff's petition relates.

1. MECHANICS' LIENS: collateral security: retention of title to improvement.

On February 20, 1918 plaintiff and defendant entered into a written contract under which the defendant agreed to erect and install a system of automatic sprinklers in the plaintiff's manufacturing plant at Fort Madison, Iowa for the sum of $19,726. It is unnecessary to recite in detail the terms and conditions of the contract. The work was performed according to the contract, and was fully completed August 8, 1919 and was approved as provided by the terms of said contract. The amount due for said work under the contract was not paid by the plaintiff, and after filing the lien by defendant as heretofore stated plaintiff filed its petition in equity to cancel of record said lien. Defendant's demurrer to said petition was overruled, and defendant then filed its cross-petition to which plaintiff interposed a general equitable demurrer which was sustained. Defendant then filed answer and counterclaim to plaintiff's petition in which the defendant prayed for judgment against the plaintiff in the sum of $20,801 with interest, which represented the amount due under the written contract for installing the automatic sprinkling system in plaintiff's factory, and also prayed that the mechanics' lien be foreclosed against the plaintiff's real estate therein described and for costs. To this pleading plaintiff filed a motion to strike on the grounds that the counterclaim as filed was identically the same pleading and contained the same matter as the cross-petition formerly filed and to which demurrer had been sustained. This motion was by the court

sustained and subsequently an order was entered dismissing defendant's cross-petition and counterclaim and judgment was entered against defendant.

Plaintiff's position throughout the progress of the case is predicated on the provision of the written contract which reads as follows: "The Kellogg-Mackay Equipment Company retains title to the material and equipment until full cash payment shall have been made therefor, and which, in the meantime, at the option of the Kellogg-Mackay Equipment Company, shall be held on storage as its property, but without any storage charges to it, with the right to the Kellogg-Mackay Equipment Company to enter upon the premises and remove the same in case of any default." Plaintiff's petition alleges that the said provision in the contract is collateral security in the form of conditional sale and does not entitle defendant to a mechanics' lien.

A statute of this state gives a party who has performed labor or furnished material, machinery or fixtures for any building, erection or other improvement upon land, a right to a mechanics' lien upon such building, erection or improvement, and upon the land belonging to the owner on which the same is situated, to secure the payment for such labor done or materials, machinery or fixtures furnished. Code Section 3089.

It is further provided that "No person shall be entitled to a mechanic's lien who, at the time of making or executing a contract for furnishing material or performing labor, or during the progress of the work, erection, building or other improvement, shall take any collateral security on such contract. But after the completion of such work, and when the contractor or other person shall have become entitled to claim or establish a lien, the taking of such or other security shall not affect the right thereto, unless such new security shall, by express agreement, be given and received in lieu of such lien." Code Section 3088.

We will briefly note the history of our state legislation on this subject. The Revised Statutes of the Territory of Iowa of 1843 (Reprint 1912, page 269) contain no provision relative to the waiver of a lien by taking collateral security. In the Code of 1851 (Section 1009) we find this provision: "No per-

son is entitled to a mechanic's lien who takes collateral security on the same contract.'' The Revision of 1860 (Section 1845) and the Code of 1873 (Section 2129) contain the same provision. In 1876 the legislature repealed the mechanics' lien law as it then existed (Chapter 100 Acts of the Sixteenth General Assembly) and the present law was enacted and with slight verbal changes appears in the present Code.

A mechanics' lien is purely statutory, and is in derogation of the common law. In determining the issue in this case it is necessary that we confine ourselves to our statutory provisions in this particular, and the decisions of courts of other states are of little value as precedent unless the cases were decided under statutes similar to our own.

I. The material question on this appeal is: Does the retention of title to the material and equipment by the defendant until the same is fully paid for, with the right reserved in case of default in making any payment on the part of the plaintiff, to take possession and enter the premises to remove the material and equipment, extinguish the vendor's right to a mechanics' lien under the provision of Section 3088 of the Code? In other words, is the retention of title under such circumstances the taking of collateral security ''on such contract?''

The word ''collateral'' in its commonly accepted legal definition means additional security to the principal obligation and subsidiary thereto. The etymology of the word indicates that it is something that runs along with and parallel 2. WORDS AND PHRASES: "collateral security." to something else of a similar character. It is something that stands by the side of the principal promise as an additional or cumulative means for securing the payment of the debt. *Moffatt v. Corning* 14 Colo. 104 (24 Pac. 7). It is a security in addition to the responsibility of the debtor. *In re Waddell-Entz Co.* 67 Conn. 324 (35 Atl. 257).

If it were not for the provision contained in the first sentence of Section 3088 a creditor within the purview of the mechanics' lien statute could have as many securities for his debt as he can obtain. In the Nebraska statute there is no provision against the taking of collateral security at the time of executing a contract for furnishing material or performing labor or during the progress of the work, and it is said in *Great Western Mfg.*

*Co. v. Hunter Bros.,* 15 Neb. 32 (16 N. W. 759) that "A creditor may have as many securities for his debt as he can obtain." Under the Michigan statute of like tenor it is said: "There can be no objection to a creditor's having more than one security for the same debt." *Peninsular Gen. Elec. Co. v. Norris,* 100 Mich. 496 (59 N. W. 151). This latter case refers to *Case Mfg. Co. v. Smith,* 40 Fed. 339, which construed a Tennessee statute which does not contain a provision against the taking of collateral security. In the Wisconsin statute there is not only an absence of this provision but it provides: "The taking of a promissory note or other evidence of indebtedness for any such work, labor or materials done or furnished shall not discharge the lien therefor hereby given unless expressly received as payment therefor and so specified therein." Section 3317 Chapter 143 Volume 2. Wisconsin Statutes 1921. See also *Cooper v. Cleghorn,* 50 Wis. 113 (6 N. W. 491). The Illinois statute contains a similar provision, Section 7139 Chapter 82 Volume 4. Jones & Addington's Illinois Statutes. See, also, *Clark v. Moore,* 64 Ill. 273, 279.

It is quite apparent under the first sentence of the Iowa Code Section 3088 that the legislature in the enactment thereof intended to deny the right to a mechanics' lien to any person who at the time of making the contract for furnishing material, or performing labor, took any collateral security on such contract. This is the more apparent by reading in connection therewith the second sentence of this section, as under its terms if the work is completed, the debt due, and the right to establish a lien exists, the taking of collateral security does not affect the right to a lien, unless by express agreement the new security is given and received in lieu of such lien.

Under the first clause of the section, if collateral security is taken, *ipso facto* the right to the lien is denied. In cases arising under the first division or sentence of this section, the only question to be determined is whether or not the person, furnishing material or performing labor, took collateral security under the contract for furnishing material or performing labor. Stating the provision in another form, if the person claiming the lien has taken collateral security at the time of making the contract to furnish material or during the progress of the work, he is not entitled to the lien. This is true independently of the

presumed intention of the parties, since the statute in express terms denies the right to the lien and the lien does not exist independently of the statute. When the defendant herein under the terms of its contract to furnish material and equipment retained the title to such material and equipment furnished, he looked not alone to the personal responsibility of the plaintiff but he secured to himself the title and also the right to enter upon the premises and retake possession of his property. The right to the lien within the contemplation of the law either did or did not exist at the time the contract was entered into. There is no such thing as waiver under the circumstances.

Under the second sentence or clause of Section 3088 of our Code it may be said that where a laborer or materialman receives security collateral to the property improved after the completion of the work, and when he is entitled to claim or establish a lien, the law presumes that it was not intended to waive or release the lien on the premises. There must be an express agreement.

We do not find that the issue in the case at bar has ever been determined by this court. In *Mervin v. Sherman,* 9 Iowa 331, the security taken was after the completion of the work, but the present statute (Section 3088) had not been enacted. The case is in no sense controlling in the instant case. The judicial thought of the *Mervin* case later became the legislative thought as expressed in the second sentence of Section 3088, for the court said that "the contract, promise, or property taken, must have been intended and accepted as collateral security, before the lien could be said to be waived or defeated." In *Gilcrest v. Gottschalk* 39 Iowa 311, the same result obtains, for the decision was made prior to enactment of the present mechanics' lien law. It appears that the note and mortgage was taken as collateral subsequently to the filing of the claim and consequently after the completion of the work. The conclusion of the court is correct under the then existing statute. ·

The first sentence of Code Section 3088 plainly indicates that if collateral security is taken upon the execution of the contract or during the progress of the work, no lien exists and the question of intent becomes immaterial, if the security taken is in fact collateral security.

In *Hale, Ayer & Co. v. B., C. R. & N. R. Co.* 13 Fed. 203 (C. C. D. Iowa) the court construed the mechanics' lien statute under the Iowa decisions above cited. Under the conformity act the court was bound (and so said) to follow the law as declared by the Supreme Court of Iowa.

It may be conceded if the statute of a state defining mechanics' liens does not provide that the taking of collateral security upon the execution of the contract or during the progress of the work shall deprive the person so taking it of the right to a lien, the taking of such security shall not be deemed a waiver of the lien unless it is so intended. The provision in the Iowa law is not found in the statutes of Nebraska, Michigan, Wisconsin, Illinois, Tennessee, Missouri, Nevada and probably some others. It is thus seen that the Iowa statute is peculiar in this respect and differs from the statutes of many of our sister states and this must be borne in mind in the application of the principles declared in their decisions.

There is but one case arising under the Iowa statute in which the question of retention of title to materials furnished is construed in relation to the right to a lien. This is the case of the *United States W. E. & P. Co. v. Burlington, C. R. & M. R. Co.* 4 Dillon 581, appearing in 23 Fed. Cases 737 (Case No. 13783) as *Taylor v. Burlington, C. R. & M. R. Co.* The question of the mechanics' lien was raised by a petition of intervention. Plaintiffs in the principal suit are trustees of railroad mortgages covering all existing and future-acquired property of the company including rolling stock, rents and income. These mortgages were executed and recorded before the material was furnished by the intervening petitioners. The mechanics' lien covered certain windmills, pumps, supplies, etc. It was stipulated that "an agreement or understanding existed between the United States Wind Engine and Pump Company and said railroad company that the title to all the property delivered should not vest in the railway company until paid for; but said agreement was not in writing, and was never recorded."

It will be observed that the mortgages were all recorded prior to the right to a mechanics' lien of the intervener. The case involved "the fixture theory" of a mortgage and under the statute the railway company was authorized not only to mort-

gage its existing property, "but also property, both real and personal, which may thereafter be acquired." The case turns primarily on the question of priority. Clearly under the facts the equities of the cause were with the trustees and the petition of intervention was properly dismissed. It may not have been necessary for the court to construe the Iowa statutes relative to a waiver of the mechanics' lien by the retention of title to the property delivered. It did, however, and said: "A seller who undertakes to secure himself in this specific way, showing that he does not rely upon the lien given by the statute to the mechanic or materialman—a way inconsistent in its nature with a right to a lien under the statute—takes 'collateral security' within the meaning of the statute, and hence is not entitled to a mechanics' lien."

The binding force of a decision is coextensive with the facts upon which it is founded, and if correlated subject-matter is under discussion and decided, such decision is not mere *obiter dictum.* It is at least a judicial dictum. *Chase v. American Cartage Co.,* (Wis.) 186 N. W. 598.

3. COURTS: rule of decision: "dictum" defined.

If a question fairly arises in the course of a trial and there is a distinct decision on that question, the ruling of the court in respect thereto cannot strictly be called a mere dictum. *Union Pac. R. Co. v. Mason City & Ft. D. R. Co.* 199 U. S. 160 (50 L. Ed. 134).

We therefore hold that the retention of title to the materials and equipment furnished by the defendant to plaintiff under the original contract was the taking of collateral security within the meaning of the law. It possesses all the earmarks and the defendant, having reserved unto himself the title and the right of re-entry, did not look only to the personal responsibility of the plaintiff but secured himself by an additional and cumulative means for the securing of the payment of the debt.

II. Is the defendant entitled to prosecute his claim for a money judgment in this case?

He was in court upon the invitation of the plaintiff. The court had complete jurisdiction of the parties and the subject-matter. Equity does and should avoid a multiplicity of suits. The rights of plaintiff and defendant are dependent upon the written con-

4. EQUITY: jurisdiction: retention of jurisdiction.

tract pleaded by both, and in seeking equity plaintiff must do equity.   There is nothing inconsistent in a decree giving to a plaintiff the relief prayed for and at the same time secure and confirm to the defendant his rights, if any, in the premises.   If the plaintiff after its prayer had been granted, did not desire to remain in the forum chosen by it, it was its privilege by motion to seek another forum and have the issue presented by the counterclaim for the recovery of the agreed contract price transferred to the law calendar.

"It was a fundamental conception of the equity jurisprudence, from the earliest periods as soon as its jurisdiction became established and its peculiar methods became developed, that the court of chancery, in any cause coming before it for decision, if the circumstances of the case would permit, and all the parties in interest were or could be brought before it, would strive to determine the entire controversy, to award full and final relief, and thus to do complete justice to all the litigants, whatever might be the amount or nature of their interest in the single proceeding, and thus to bring all possible litigation over the subject-matter within the compass of one judicial determination."   1 Pomeroy on Equity Jurisprudence (4th Ed.) Section 242.

A counterclaim is not a defense, but an independent cause of action to which the plaintiff has the right to reply.   The court properly ruled on the issues joined on plaintiff's petition and defendant's answer.   Defendant had a standing in court, and it is a useless procedure to tell the defendant to go hence, and institute such "independent cause of action upon the contract therein sued on, or for such other action as it may deem necessary to enforce the remedy which it may deem itself entitled to," as was told the defendant by the court in its ruling upon plaintiff's motion to strike.   Defendant prayed for a money judgment and predicated a cause of action in its counterclaim.   It may have anticipated an adverse ruling of the court on its prayer for the foreclosure of the mechanics' lien, and elected in that event to end the controversy on all matters in relation to the contract in question.

There is no necessity for a dismissal of the counterclaim, and justice and equity require that the defendant continue to

have a standing in the court selected by its adversary with the right on the part of plaintiff to transfer, if plaintiff so elects. Therefore, this cause is remanded to the trial court for further proceedings not inconsistent with the views herein expressed.— *Affirmed in part and reversed in part.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.