National Life Insurance Company v. O. B. Ayres, Appellant.

**Mechanics' Liens:** several contracts. Where lumber is furnished between November 18, 1895, and the following March, and a note therefor is given on account, and a payment made thereon,

and in the following May more lumber is furnished on a similar order and used on the same building, a separate statement for lien is made for it and it is made a separate cause of action on foreclosure, the two transactions are separate, and a notice of lien, filed within ninety days after the furnishing of the last item, is insufficient to establish a lien as to the first item.

"Improvements:" *What constitutes.* Lumber furnished for the purpose of building an office and putting in floors and ceiling, an office in the building, and putting in stairs and elevators, and erecting a shed behind the building, was furnished for "improvements," within Code, section 3089, giving a lien for lumber furnished for improvements on land.

Subrogation: *Priority.* Plaintiff furnished money for the payment of existing liens of record on certain property under an agreement with his borrower that the liens should not be canceled, but should be assigned to one L. to be held by him for the benefit of the loaner until a note and mortgage for the amount loaned was executed, and delivered to plaintiff. The mortgage so given was recorded June 18, 1896. A mechanic's lien on the property was not included in the mortgage, it not being of record, but was filed October 12, 1896. *Held,* that plaintiff was entitled to priority over the mechanic's lien of defendant, as, under the agreement, he was subrogated to the rights of the holders of said prior liens. *Association v. Scott,* 86 Iowa, 432, distinguished.

*Appeal from Polk District Court.*—Hon. C. P. Holmes, Judge.

Saturday, April 14, 1900.

This is a contest as to priority between the plaintiff, as mortgagee of certain real estate, and the defendant, the holder of a sheriff's deed made in pursuance of a sale of the same property on foreclosure of mechanics' liens. Decree was rendered in favor of plaintiff. Defendant appeals.— *Affirmed.*

*Ayres, Woodin & Ayres* for appellant.

*Geo. H. Lewis* for appellee.

GIVEN, J.—I.   The controversy rests upon the follow-ing facts, as we find them from the pleadings and evidence: S. N. Talcott purchased the property in question, a business property in the city of Des Moines, subject to a certain mortgage and other liens thereon, amounting to about four-teen thousand dollars, which he agreed to pay as part of the purchase price.   Mr. Talcott desiring to use lumber for cer-tain purposes on the property, verbally ordered a supply from Ewing & Jewett, which they furnished on the order, no other contract having been made than that which is implied from the order.   Between November 18, 1895, and March 17, 1896, inclusive, lumber was furnished at various times, amounting to two hundred and ten dollars and ninety-four cents.   On April 7, 1896, Mr. Talcott executed his note to Ewing & Jewett for that amount on ac-count of this lumber, and on June 9th following paid fifty dollars thereon.   On October 12, 1896, Ewing & Jewett filed their statement for a mechanic's lien for the balance due on said lumber.   Between May 27 and July 22, 1896, inclusive, Ewing & Jewett, on a like order, furnished more lumber to the amount of twenty-four dollars and seventy-six cents, which was used on said building, and on October 12, 1896, filed their other statement for a mechanic's lien therefor.   Prior to June 18, 1896, Mr. Talcott applied to the plaintiff, through George H. Lewis, for a loan of twelve thousand dollars, to be secured by first mortgage on said property.   We find that it was expressly agreed that the twelve thousand dollars and two thousand dollars which Mr. Talcott was to furnish should be used to take up exist-ing liens appearing of record against the property, and that they should not be canceled, but should be assigned to Mr. Lewis, to be held by him for the plaintiff until the mort-gage to secure the twelve thousand dollars was executed and delivered.   The amount was furnished by plaintiff and by Mr. Talcott, and said existing liens as shown of record were thus taken up by Mr. Lewis.   The liens of Ewing & Jewett,

not then being of record, were not included. On said eighteenth of June, 1896, Mr. Talcott executed and delivered to the plaintiff his note and mortgage for said twelve thousand dollars, which mortgage was immediately entered of record. March 24, 1897, Ewing & Jewett commenced action in two counts against S. N. Talcott for decree establishing and foreclosing said mechanics' liens. This plaintiff was not made a party to that action. Decree was rendered as prayed, and on May 15, 1897, the sheriff sold said property under said decree, to Ewing & Jewett, for two hundred and sixty-five dollars and fifty-eight cents, and on August 13, 1897, they assigned the sheriff's certificate to the defendant, Ayres, who thereafter received a sheriff's deed thereon. Plaintiff appealed, and moved to set aside decree and sale, to which Ayres made answer. Defendant Ayres also appeared, and was made a defendant in an action brought by the plaintiff against Mr. Talcott to foreclose its mortgage. The cases were consolidated, and disposed of as to all other parties and issues except between the plaintiff and defendant Ayres as to their claims of priority.

II. Two questions are presented for our consideration, namely, whether Ewing & Jewett were entitled to a mechanic's lien for all or any part of said accounts for lumber, and, if so entitled, then whether the plaintiff is entitled to priority over such lien by right of subrogation to the liens that existed under said prior incumbrances. Plaintiff contends that Ewing & Jewett were not entitled to mechanics' liens, for the reason that the lumber was not furnished "for any building, erection, or other improvement on land," as provided in section 3089 of the Code, but for repairs only of a building or erection. Mr. Talcott testifies: "It was for building an office, putting in floors and ceiling an office in the building I bought, and for putting in floor, ceilings, stairs, elevator, and a platform and shed out behind." Clearly, this lumber was not furnished merely for the purpose of replacing worn-out parts of the building, but

for the "improvement" of the building. It is argued that the repairs were not open and obvious, so as to give notice to third persons; and *Evans v. Tripp,* 35 Iowa, 371, is cited. The improvements were such that any person examining the building within the ninety days allowed for filing a lien would have been aware of them. We think Ewing & Jewett were entitled to a lien for this lumber, provided their statements were filed within the time required; and this brings us to consider whether the two accounts and statements may be considered as one transaction. Mr. Talcott's testimony tends to show that the improvements were contemplated at the same time, and that the lumber was furnished as he was able to progress with the improvements; but we think the manner in which the parties treated it shows otherwise. Evidently the improvement for which the first lumber was furnished was considered as complete; otherwise, that account would not have been closed by the note, as it was, nor made the subject of a separate statement for a lien, and a separate cause of action, when foreclosure was asked. We are satisfied that after that improvement was completed, Mr. Talcott concluded to make further improvements, and that the last lot of lumber furnished was not under the same order, nor for the same purpose, as the first. The last item furnished under the first order was on March 24, 1896, and statement for lien was filed October 12, 1896, over two hundred days after the last item was furnished. The evidence shows that said last item was furnished more than ninety days before the plaintiff paid out the twelve thousand dollars and took and recorded its mortgage, and that the plaintiff had no notice at that time of such a claim. We are of opinion that the first statement for a lien is not valid as against the plaintiff. The last item in the second count is July 22, 1896, and the statement was filed October 12, 1896, which was within the ninety days allowed for filing such claims, and therefore we conclude that this is a valid lien.

III. We now inquire whether the plaintiff is entitled to priority over this valid lien by right of subrogation. From the many authorities cited we understand it to be undisputed that the law is, that one who voluntarily pays a lien debt of another, or who merely furnishes the money to the lienholder to pay his debt, is not entitled to subrogation: but one who pays such a debt under compulsion, or to save himself from loss, or upon an agreement for subrogation, is entitled to be subrogated to the rights of the lienholder. That a right to subrogation may arise from an agreement of the parties has been recognized by this court in *Barber v. Lyon,* 15 Iowa, 43; *Wormer v. Agricultural Works,* 62 Iowa, 699; *Weidner v. Thompson,* 69 Iowa, 36. We have seen that the plaintiff furnished the twelve thousand dollars to be applied in payment of the purchase price by taking up the liens of record thereon under an express agreement that said liens were not to be canceled by the holders thereof, but to be assigned and held for the benefit of the plaintiff, and that said liens were so taken up. We do not think it requires further argument or authorities to show that the plaintiff is entitled to subrogation, and therefore to priority over defendant's lien. Appellant's counsel seem to rely so explicitly on *Association v. Scott,* 86 Iowa, 432, that we notice the fact that in that case there was no agreement for subrogation, and that the conclusion is grounded in part, at least, upon the negligence of the plaintiff in not requiring a complete abstract of title, or examining the record. Counsel have discussed at length the question whether the plaintiff is entitled to subrogation by virtue of having paid the purchase price of the property, but, in view of the conclusion reached, we will not follow that discussion further than to refer to *Kaiser v. Lembeck,* 55 Iowa, 244. For the reasons stated, the judgment of the district court is AFFIRMED.